NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

MICHAEL BOGDANSKI, PETITIONER, v. HENRY TOMAN, RESPONDENT.

Decided April 24, 1940.

For the petitioner, *Joseph F. Holland.*

For the respondent, *James J. Skeffington.*

\*     \*     \*     \*     \*     \*     \*

The petitioner in this case originally worked for Mr. Henry Toman from the fall of 1936 until March of 1937, when he started working for the Hoffman Beverage Company. It appears that prior to that time he received approximately $15 per month from Mr. Toman. He testified that about March of 1937 he started to work for the Hoffman Beverage Company full time and from that time on he worked for Mr. Toman during his spare time and without any regularity, as a handyman and general houseworker, that is, he would wash the dishes or drive Mrs. Toman to go shopping or cut the grass, and generally make himself useful in and about the house; that sometimes he would sleep there and other times he would go home to his mother's house. He testified that there was no regularity about the remuneration which he received from Mr. Toman but that Mr. Toman would

usually give him in cash whatever he felt the services that he rendered were worth, taking the cash from his pocket. He testified that he was employed by the Hoffman Beverage Company as a brewery worker and received $42 a week from them. His attention was called to a statement which he had made on September 22d, 1939, wherein he had stated in part that he received no definite salary from Mr. Toman after securing his full-time job with the Hoffman Beverage Company because of a Brewers' Union rule forbidding the holding of any other job for pay at the same time. He denied having made this part of the statement and said definitely that the Brewers' Union to which he belonged had no such rule. He further testified that on Monday, September 11th, this being his day off, he had been at the Toman house and had cleaned the rugs and cut the grass and at about eight P. M. he had washed the dishes when Mrs. Toman took her dog out on a leash across the street to an empty lot, and there she took the dog off the leash and a little later he heard a commotion as if dogs were fighting and he thereupon ran across the street to the vacant lot where the noise came from and there saw the Toman's dog and the dog of a neighbor fighting. He testified that he started to separate them and in the scuffle he received three rather deep scratches on the second finger of his right hand. After the dogs were separated he noticed blood coming from his finger and he subsequently put some mercurochrome on it and went to Dr. H. Cassini. Dr. Cassini cauterized the scratches. A few days later his finger still bothered him and he reported the matter to the board of health, and as the finger was then troubling him he was sent to Dr. Clements, who disarticulated his second finger.

There is no question about the extent of the disability. It is apparent that the petitioner has lost the second finger of his right hand.

The petitioner called to the stand Mr. Henry Toman, who testified that prior to working for the Hoffman Beverage Company, the petitioner had worked for him and that after he received a full-time job, the petitioner frequently came around his home and while there was no agreement between him and the petitioner as to pay, the petitioner did little odd

jobs about the house for himself and his wife and he gave him what he considered to be tips or gifts of money, which would amount roughly to about $5 a week. Mr. Toman testified that there was a rule of the Brewers' Union which forbid any member working at any job for pay outside of their brewers job and that Mr. Bogdanski is a member of that union and could not hold another job. Mr. Bogdanski's union membership dated from August of 1937. Mr. Toman testified that he was home and in the house on September 11th talking with Mr. Bogdanski when he heard the dogs fighting in the vacant lot and Mr. Bogdanski ran across the street to separate them and in so doing he received a scratch on the second finger of his right hand. His finger bled and Mr. Toman took charge of the dog and Mr. Bogdanski went to the office of Dr. Cassini. A few days later Mr. Bogdanski again came to the home of Mr. Toman and stated that his finger was giving him trouble and that it was dead feeling and the petitioner thereafter went to the board of health and later to Dr. Clements of 15 Washington street, Newark, and Dr. Clements sent him to St. James Hospital on Wednesday, September 20th, where his finger was amputated.

Mr. Walter Ruhnke, the business agent of the Brewers Union, of which Mr. Bogdanski is a member, was then called to the stand by the respondent and he testified that the petitioner was a member of the Brewers' Union at the Hoffman Beverage Company and that there was a rule of the union which prohibited any member of that union from working at any other job for pay while working as a member of that union and that Mr. Bogdanski as well as all other members of the union knew of the existence of that rule and were supposed to abide by it.

There is no dispute as has heretofore been indicated as to the nature and extent of the disability. There is a dispute as to the question of liability, and after carefully considering all the testimony adduced before me, I am satisfied that there was no contract of employment existing between Mr. Toman and the petitioner at the time that he sought to separate the dogs that were fighting. It is elementary that the Workmen's Compensation act only applies where there is an exist-

ing and valid contract of employment at the time of the alleged occurrence. Moreover, there is a grave question of credibility injected into the case because of the statement by the petitioner with respect to the rule of conduct prohibiting him from having any other gainful employment at the time that he was regularly employed as a member of the Brewers' Union. Further there also arises the question as to whether or not the petitioner was a volunteer at the time that he attempted to stop the dog fight. As has been pointed out by our courts in previous cases, if the injury can be seen to have followed as a natural incident of his work and to have been contemplated by a reasonable person familiar with the whole situation as the result of an exposure occasioned by the nature of the employment, then it arises out of the employment, but by the same token, it excludes an injury which cannot fairly be traced to the employment as the proximate cause and which comes from a hazard to which the workman would have been exposed apart from the employment. The causative factor must be peculiar to the work and not common to the neighborhood; it must be incidental to the character of the business and not independent of the relation of master and servant. In this instance I feel that the act of the petitioner in attempting to separate the dogs that were fighting in the vacant lot was an act separate and apart from his duties for Mr. Toman, assuming that there was a legal and enforceable contract of employment in existence at the time, so that considering all of the circumstances attending this particular case I am satisfied and find as a fact that the petitioner has failed to sustain the burden of proving that he suffered an injury as the result of an accident arising out of and in the course of his employment coming within the provisions of the Workmen's Compensation act.

\*        \*        \*        \*        \*        \*        \*

JOHN C. WEGNER,
*Deputy Commissioner.*